```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                              :
PIERRE CHAINEY,               :
                              :
         Petitioner,          :    Civ. No. 18-11535 (NLH)
                              :
    v.                        :    OPINION
                              :
UNITED STATES OF AMERICA,     :
                              :
         Respondent.          :
_____:
```

APPEARANCES:
Pierre Chainey, No. 20198050
FCI McKean
P.O. Box 8000
Bradford, PA 16701
    Petitioner pro se

Jason M. Richardson
Office of the United States Attorney
Camden Federal Building
401 Market Street
P.O. Box 1427
Camden, NJ 08101
    Counsel for Respondents

HILLMAN, District Judge

    Petitioner Pierre Chainey, a prisoner presently confined at the Federal Correctional Institution at McKean in Bradford, Pennsylvania, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). See ECF No. 4. For the reasons that follow, the Court will deny the Petition on the merits and a certificate of appealability shall not issue.

I.   BACKGROUND

In November 2005, Petitioner established a mortgage brokerage company named Universal Lending Solutions, LLC ("ULS"). See ECF No. 8-3, at 41. Petitioner was both a loan officer at the company and its chief executive officer. See id. at 41-42. Petitioner maintained bank accounts under the names "Universal Lending Services, LLC" and "GC Document Processing Services." See id. at 42.

Between November 2005 and January 2008, Petitioner, along with other individuals, obtained mortgage loans for unqualified borrowers using fraudulent loan applications, HUD-1 settlement statements, and other documents. See id. Petitioner would then transfer the fraudulently obtained mortgage loans into the bank accounts he maintained. See id. On November 14, 2012, Petitioner was charged in an eleven-count indictment with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and money laundering. See ECF No. 8-1. Petitioner's fraudulent activity encompassed loans issued to twenty-two (22) separate properties. See id.

On January 24, 2014, Petitioner pleaded guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). See ECF Nos. 8-2, 8-4. As part of his plea agreement, Petitioner agreed that he conspired with others

to obtain fraudulent mortgage loans from financial institutions related to four (4) of the twenty-two (22) properties. See ECF No. 8-2, at 7. Petitioner did not agree that he conspired with others to obtain fraudulent mortgage loans from financial institutions related to the other nineteen (19) properties. See id. The plea agreement also stated that "for the purposes of sentencing, uncharged offenses and/or dismissed counts will be treated as relevant conduct pursuant to U.S.S.G. § 1B1.3 to the extent that the offenses relate to the mortgage loans or related transactions" concerning the twenty-two (22) properties. See id. at 3.

According to the Presentence Report ("PSR") prepared by the United States Probation Office, Petitioner's total offense level for sentencing guideline calculation purposes was twenty-four (24). See PSR ¶ 169. This number was based upon: a base offense level of seven (7); a sixteen (16) level increase for a loss amount of at least $1,500,000, but no more than $3,500,000; a two (2) level increase for a crime involving more than ten (10) victims; a two (2) level enhancement for Petitioner's role as an organizer or leader in the criminal activity; a two (2) level reduction for acceptance of responsibility; and a one (1) level reduction for an early guilty plea. See id. at 36-37. The Court ultimately granted Petitioner a downward variance to an offense level of twenty-three (23). See ECF No. 8-5, at 41.

Petitioner was sentenced to fifty-four (54) months in prison and ordered to pay restitution.  See ECF No. 8-4.

In 2018, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  See ECF No. 4.  The Government filed an answer opposing the motion.  See ECF No. 8.  On January 31, 2019, Petitioner filed a reply brief.  See ECF No. 9.  The Petition is now ripe for disposition.

II.   STANDARD OF REVIEW

A prisoner in federal custody under a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon the grounds that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).  The Court, in considering a § 2255 motion, must accept the truth of a movant's factual allegations unless they are frivolous on the basis of the existing record.  See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court may deny the motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

III. DISCUSSION

    *A. Ineffective Assistance of Counsel*

Petitioner's motion raises multiple claims of ineffective assistance of counsel. See ECF No. 4, at 21-25. Specifically, Petitioner contends that his plea counsel failed to investigate and conduct due diligence as to the appropriate loss amount and to "compel the government [to] produce [. . .] the documentary and witness testimony to substantiate the losses used for prison term guideline sentencing calculation purposes." Id. Petitioner asserts that as a result of these deficiencies, he was subjected to a harsher sentence than he would have otherwise received. See id.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 685–86 (1984). A defendant who alleges ineffective assistance must satisfy the two-part test outlined in Strickland:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

5

Id. at 687.

To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 686-88. A petitioner must identify the particular acts or omissions that are challenged as unprofessional. See id. at 690. Under this first prong of the Strickland test, scrutiny of counsel's conduct must be "highly deferential." See id. at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, then counsel's strategic choices are "virtually unchallengeable." Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing Strickland, 466 U.S. at 690-91).

The second prong of the Strickland test requires the petitioner to prove prejudice. See Strickland, 466 U.S. at 693. To demonstrate prejudice, the defendant must show that counsel's deficient performance "actually had an adverse effect on the

6

defense." Id. at 693.  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

Here, Petitioner has not demonstrated that his counsel was deficient.  Petitioner's assertions that his counsel failed to investigate the loss amount or conduct due diligence into the appropriate loss amount for sentencing is belied by the record. Petitioner's indictment charged him with over $7,000,000 dollars in losses to various lenders.  See ECF No. 8-1, at 6.  To challenge this number, defense counsel hired an expert to review Petitioner's case and determine the exact loss amount.  See ECF No. 8.  Ultimately, the expert was unable to determine an exact amount number in his report, but defense counsel still provided the report to the government and used it to argue that the loss amount was considerably less than $7,000,000.  See ECF No. 8, at 25.  Defense counsel also conducted an in-person meeting with the government prior to sentencing to discuss this matter.  See ECF No. 9.  It was based upon the defense's expert report and the meeting, that the parties agreed to a loss amount which was

7

at least $1,500,000 but no more than $3,500,000 for the purposes of sentencing.  See ECF Nos. 8-9; 8-10, at 5.

Additionally, when the United States Probation Office issued its PSR, which listed the loss amount as at least $3,265,493.18, defense counsel objected.  See ECF No. 8-10, at 4-5.  Petitioner's counsel stated that he had reviewed the PSR with his client and that, "Mr. Chainey would agree that for the purposes of his offense level determination" at sentencing, that a loss amount in the range of at least $1,500,000, but no more than $3,500,000 was appropriate.  See id. at 5.  Defense counsel indicated this was the amount agreed upon by the parties and noted his objection to any loss amount above $3,500,000.  See id.  Accordingly, the record clearly demonstrates that defense counsel worked diligently to determine the appropriate loss amount and to argue for a lesser loss amount than the original $7,000,000 charged in the indictment.

Petitioner is also unable to demonstrate that his counsel was ineffective for not "compelling" the government to produce the "documentary and witness testimony to substantiate" the loss amount figure.  See ECF No. 4, at 22.  Generally, the government does bear the burden of "establishing, by a preponderance of the evidence, the amount of loss for purposes of sentencing enhancement."  United States v. Jimenez, 513 F.3d 62, 86 (3d Cir. 2008).  However, once the government provides a prima facie

8

case as to the loss amount, the burden shifts to the defendant to demonstrate the amount is inaccurate.  See id.  A presentence report "serves as a prima facie and sufficient showing of fact." See United States v. McDowell, 888 F.3d 285, 291 n.1 (3d Cir. 1989); see also United States v. Johnson, 456 F. App'x 122, 127 n.3 (3d Cir. 2011).  The burden is on the petitioner to demonstrate that the presentence report is inaccurate or incomplete.  See Johnson, 456 F. App'x at 127 n.3.

Here, the presentence report was the prima facie showing of fact as to Petitioner's loss amount.  If Petitioner wished to challenge this amount, the burden would have been on him to demonstrate the figure was inaccurate.  See Johnson, 456 F. App'x at 127 n.3 ("[T]he [presentence] report serves as a prima facie and sufficient showing of fact," so Johnson had "the burden of production ... to come forward with evidence ... indicat[ing] that the report [was] incorrect or incomplete." (alterations in original)).  Importantly, Petitioner did not dispute the loss amount used at sentencing as it had been agreed upon by both parties.  See ECF No. 8-5, at 6 ("The loss amount figure becomes moot because it falls within the particular category that both the government and Probation and [Petitioner] agree to.  So, that issue is not before us [at sentencing].").  Accordingly, Petitioner's counsel was not ineffective for failing to "compel" to government to produce "documentary and

9

witness testimony" at sentencing regarding the loss amount. Petitioner is not entitled to relief on this claim.

B. *Brady Violation*

Petitioner next alleges that the government committed a Brady[1] violation because it did not produce at sentencing any "documentary or witness proof . . . to show that the Defendant did any wrong doing in the obtaining of loans" concerning the nineteen (19) properties for which Petitioner denied conspiring with others to obtain fraudulent mortgage loans.  See ECF No. 4, at 25.  Petitioner submits that he and the government "did not agree as to which or any of these properties should be used [for] the calculation of the loss [amount]" and that "the government showed no nexus of the 19 properties to the crimes that the Defendant pled guilty."  See id.  Petitioner also argues that "if the government had documentation to justify a 2.7 million dollar loss and withheld that information, then it [was] a clear violation of Brady v. Maryland."  Id.

The government has a duty to provide a defendant with all relevant, exculpatory materials.  See Kyles v. Whitley, 514 U.S. 419, 432 (1995) (citing Brady, 373 U.S. 83).  The government's suppression of material evidence favorable to the defense constitutes a violation of a defendant's due process rights.

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

See Brady, 373 U.S. at 87. Evidence is considered material, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). To establish a Brady violation, a petitioner must show that: (1) the evidence at issue was favorable to the defense; (2) the evidence was suppressed by the government; and (3) petitioner was prejudiced as a result. See Moore v. Illinois, 408 U.S. 786, 794-95 (1972).

Here, Petitioner has not established that a Brady violation occurred. Petitioner does not indicate that any evidence was suppressed. Rather, Petitioner's argument is simply a reiteration of his previous claim that the government should have been compelled to demonstrate the exact loss amount figure at sentencing. Since Petitioner has failed to point to any evidence that was allegedly suppressed, he cannot establish a Brady claim. Petitioner is not entitled to relief on this claim.

C. *Statute of Limitations*

In Petitioner's final claim for relief, he argues that the government should not have been able to include transactions which fell outside of the statute of limitations as part of his loss amount calculation. See ECF No. 4, at 27. Specifically, Petitioner states that the nineteen (19) properties to which he

11

did not agree that he had conspired to obtain fraudulent mortgages for, fell outside the statute of limitations and thus, should not have been included as part of the loss amount. See id. Petitioner, citing to Toussie v. United States, 397 U.S. 112 (1970), argues, "[c]riminal statute[s] of limitation are to be liberally interpreted in repose." Id.  It is unclear which of Petitioner's constitutional rights he is alleging was violated.  However, to the extent Petitioner argues that the use of the time-barred transactions to calculate the loss amount violated federal law, that argument is without merit.

For the purposes of sentencing, a court may consider relevant uncharged conduct.  See United States v. Sinkler, 555 F. App'x 217, 221 (3d Cir. 2014) ("The District Court may consider relevant information in sentencing, including uncharged conduct or acquitted conduct."); see also United States v. Watts, 519 U.S. 148, 156 (1997) (per curiam).  This includes conduct which may have occurred beyond the statute of limitations.  See United States v. Stephens, 198 F.3d 389, 390-91 (3d Cir. 1999) ("conduct that is not chargeable because the statute of limitations has expired may be considered in determining the appropriate sentence under the Guidelines"); see also United States v. Siddons, 660 F.3d 699, 704 (3d Cir. 2011).

Here, the use of the nineteen (19) properties and transactions which may have been outside the statute of

12

limitations to determine Petitioner's loss amount was not a violation of federal law because a sentencing court is permitted to consider conduct which has occurred outside the statute of limitations.  See Sinkler, 555 F. App'x at 221; see also Stephens, 198 F.3d at 390-91.  Moreover, in Petitioner's plea agreement he expressly agreed that, "for the purposes of sentencing, uncharged offenses and/or dismissed counts will be treated as relevant conduct pursuant to U.S.S.G. § 1B1.3."  See ECF No. 8-2, at 3.  Accordingly, the Court's inclusion of the nineteen (19) properties as relevant conduct in determining the appropriate loss amount for Petitioner's sentence did not violate federal law.  Petitioner is not entitled to relief on this claim.

V.   CERTIFICATE OF APPEALABILITY

The Court will decline to issue a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

VI.  CONCLUSION

For the foregoing reasons, the Petition is denied.  An appropriate order will follow.

Dated: November 27, 2019         __s/ Noel L. Hillman_____
At Camden, New Jersey            NOEL L. HILLMAN
                                 United States District Judge

13